**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

Michele D.,[1]

                    Plaintiff,

      v.                              5:25-CV-301
                                        (MJK)

Commissioner of Social Security

                    Defendant.

---

Howard D. Olinsky Esq., for Plaintiff
Geoffrey M. Peters Esq., Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

### MEMORANDUM-DECISION & ORDER

Michele D. brought this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Social Security Commissioner's final decision denying her application for benefits. (Dkt. 1.). Michele D. consented to the jurisdiction of a Magistrate Judge. (Dkt. 5). Both parties filed briefs (Dkts. 9, 11, 12) which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

---

[1] This Report-Recommendation will identify the plaintiff using only her first name and last initial to protect her privacy.

## I.   PROCEDURAL HISTORY

On October 13, 2022, Michele D. filed an application for Title II disability insurance benefits, alleging disability beginning May 18, 2018. (T. 17).[2] The Social Security Administration denied the claim initially on February 28, 2023, and again upon reconsideration on May 31, 2023. (*Id.*). Michele D. requested a hearing nearly a month later. (*Id.*) Administrative Law Judge ("ALJ") John Molleur held a hearing on September 25, 2024. (T. 47-78). At the hearing, Kevin Dwyer represented Michele D.. (T. 49). Both Michele D. and Vocational Expert Anken testified. (T. 47-78). On December 17, 2024, ALJ Molleur issued an unfavorable decision. (T. 17-40). The appeals council later denied Michele D.'s appeal. (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, plaintiffs seeking disability insurance or supplemental security income benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any

---

[2] All page references are to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months …" 42 U.S.C. § 1382c(a)(3)(A). In addition, plaintiffs'

> physical or mental impairment or impairments [must be] of s uch severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [they] live[], or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and supplemental security income disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience … Assuming the claimant does not have a listed impairment, the

> fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920. Plaintiffs have the burden of establishing disability at the first four steps. *See Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). If they establish that their impairment prevents them from performing their past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

When reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Id.* at 417; *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* Yet this standard is a very deferential standard of review "—

even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). But reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

5

### III.  FACTS

The record includes Michele D.'s medical and mental health treatment records which the parties are familiar with. The Court will refer to the pertinent records and the hearing testimony in its analysis of the parties' claims as appropriate.

### IV.  THE ALJ'S DECISION

At step one of the five-step-sequential analysis, ALJ Molleur determined that Michele D. has "not engaged in substantial gainful activity since May 18, 2018, the alleged onset date." (T. 20) (cleaned up).

At step two, ALJ Molleur concluded that Michele D. had "the following severe impairments: obesity, fibromyalgia. . ., cervical degenerative disc disease . . ., left knee posterior cruciate ligament (PCL) tear, right knee meniscus tear, migraine[s], hearing loss, major depressive disorder, generalized anxiety disorder, borderline personality disorder[,] and post-traumatic stress disorder." (*Id.*).

At step three, ALJ Molleur determined that Michele D. "does not have an impairment, or combination of impairments, that medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix. 1." (T. 22) (internal citations omitted).

Next, ALJ Molleur discussed the "paragraph B" criteria. (T. 23-25). "To satisfy the paragraph B criteria," mental impairments "must result in one extreme limitation or two marked limitations in a broad area of functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). Here, ALJ Molleur found that Michele D. did not meet the "paragraph B" criteria because she determined that Michele D. had (1) mild limitations in understanding, remembering, or applying information; (2) moderate limitations interacting with others; (3) moderate limitations maintaining concentration, persistence, or pace; and (4) mild limitations adapting and managing oneself. (T. 24).

ALJ Molleur also considered the "paragraph C" criteria. (T. 25). The "paragraph C" criteria require a documented medical history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing

and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(c). Here, ALJ Molleur noted that the "paragraph C" criteria were not met. (*Id.*).

After this, ALJ Molleur determined that Michele D. had the residual function capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) except that she can frequently climb, balance, stoop, kneel, crouch and crawl. She can frequently reach overhead bilaterally. She is limited to work in an environment at no more than a moderate noise level. She can maintain concentration, persistence or pace for simple and detailed, but not complex, tasks. She should avoid tandem or other team oriented work.

(T. 25).

To make this finding, ALJ Molleur considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*).

At step four, ALJ Molleur reasoned that Michele D. has no past relevant work, was within the "younger individual age 18-49" category "on the alleged disability onset date" but is now in the "closely

8

approaching advance aged" category, has "at least a high school education," and "transferability of skills is not an issue." (T. 38-39).

Finally, at step five, ALJ Molleur concluded that "considering" Michele D.'s "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that" she "can perform." (T. 39). Accordingly, ALJ Molleur determined that Michele D. is not disabled as defined by the Social Security Act. (T. 39).

## V.   ISSUES IN CONTENTION

On appeal, Michele D. argues that ALJ Molleur erred by finding moderate limitations in the Psychiatric Review Technique but rejecting Dr. L. Blackwell's findings of moderate social limitations and crafting an RFC without social limitations. (Pl. Br. at pgs. 5-12).[3] In response, the Commissioner argues that ALJ Molleur did not err as to the social limitations. (Def. Br. at pgs. 8-15).

---

[3] (Pl. Br.) refers to Plaintiffs Brief, Dkt. 9, and (Def. Br.) refers to Defendants Brief, Dkt. 11.

## VI.   DISCUSSION

**ALJ Molleur erred when he failed to include social limitations in his RFC but the error was harmless because two of the jobs offered accounted for moderate social limitations.**

The Court rejects Michele D.'s argument on appeal. ALJs are required to craft an RFC that clearly identifies the claimant's limitations. Here, ALJ Molleur failed to clearly identify Michele D.'s limitations in interacting with coworkers, supervisors, and the public. This was error. But ALJ Molleur offered jobs which accounted for moderate limitations to coworkers, supervisors, and the public. So that error was harmless. And because ALJ Molleur's error was harmless, the Court denies Michele D.'s appeal.

RFC is "what [the] individual can still do despite [their] limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular continuing basis … A 'regular and continuing basis' means eight hours a day, five days a week, or an equivalent work schedule." *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (quoting *Melville v. Apfel*, 198 F. 3d 45, 52 (2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at *2).

10

In their RFC determinations, ALJs must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) ("the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claimant can perform other work existing in the national economy."); *Genier v. Astrue*, 606 F. 3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (internal citations omitted).

ALJs must specify the functions a plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F. 2d 582, 588 (2d Cir. 1984)). The RFC assessment must

11

also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also Angelo Michael G. v Kijakazi*, No. 6:22-CV-00892 (TWD), 2023 WL 4763792 (N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F. 2d at 587). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527(d)(2)).

ALJ Molleur's RFC analysis as to Michele D.'s social limitations is confusing. In the RFC, ALJ Molleur notes that Michele D. "should avoid tandem or other team-oriented work." (T. 25). The natural understanding of this sentence is that Michele D. cannot perform tandem work or teamwork. But the sentence says nothing about Michele D.'s ability to interact with co-workers, supervisors, and the public at a job where Michele D. performs individual work.

At first blush, the Paragraph B analysis seems to answer whether Michele D. can interact with coworkers, supervisors, and the public. In

the Paragraph B analysis, ALJ Molleur notes that Michele D. has a moderate limitation on her ability to interact with others. (T. 24). Moderate limitations, in that context, addresses Michele D.'s "abilities to relate to and work with supervisors, co-workers, and the public. Examples include" among other things "cooperating with others; asking for help;" and "responding to requests, suggestions, criticism, correction, and challenges[.]" Pt. 404, Subpt. P, App. 1(E)(2). In sum, it seems that ALJ Molleur determined that Michele D. has moderate limitations on her ability to interact with supervisors, co-workers, and the public.

But ALJ Molleur, in the RFC analysis, finds that Michele D. has no social limitations. When performing the supportability and consistency analyses on Dr. Blackwell's opinion, ALJ Molleur wrote:

> The claimant's slow processing skills, fatigue, anxious and depressed moods, difficulties forming relationships and social isolative tendencies require that she avoid tandem or other team oriented work as she does not possess the social skills and mental capacity to handle working in close proximity to another individual during the course of a normal workday due to major depressive disorder, generalized anxiety disorder, borderline personality disorder and post-traumatic stress disorder. Yet, the claimant's normal mood and affect, cooperative demeanor, and normal speech at examinations and her adequate social skills during her CE are inconsistent with someone who is limited in their ability to interact with coworkers and supervisors during the course of a normal workday

13

(T. 37) (internal citations omitted).

This passages indicates that Michele D. has no limitations on her ability to interact with coworkers, supervisors, and the public.

To explain this, the Court takes a quick detour to provide a grammar lesson. "Yet" is a coordinating conjunction.[4] And coordinating conjunctions link independent ideas.[5] Understanding that, the first sentence in the above paragraph (addressing tandem or other team-oriented work) can be ignored because it is an idea that is independent from the second sentence (addressing Michele D.'s ability to interact with others). This makes sense. A person's ability to perform tandem work or teamwork is different from their ability to work independently and interact with their coworkers, supervisors, and the public. Thus, ALJ Molleur's decision to craft an RFC restricting Michele D. from tandem work or teamwork is insufficient to account for moderate limitations in interacting with others.

---

[4] Bryan A. Garner, the Redbook: A Manual on Legal Style § 1.4 (2d ed. 2006) ("Use a comma to separate two independent clauses joined by a coordinating conjunction (*and*, *but*, *or*, *nor*, *for*, *yet*, *so*)").

[5] *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236, (2011) (noting that "linking independent ideas is the job of a coordinating junction like 'and,' not a subordinating junction like 'even though'")

14

Turning to the second sentence, ALJ Molleur finds that Michele D. has no social limitations. ALJ Molleur writes that Michele D.'s mood, affect, demeanor, speech at consultative exams, and social skills are "*inconsistent* with someone who is limited in their ability to interact with coworkers and supervisors during the course of a normal workday." (T. 37) (emphasis added). Inconsistent is a negative adjective that means "lacking agreement" or "not compatible with."[6] ALJ Molleur's use of a negative adjective here creates confusion. To remove that confusion, the reader must transform inconsistent (the negative adjective) to consistent (the positive adjective). With the positive adjective, the sentence becomes: Michele D.'s mood, affect, demeanor, speech at consultative exams, and social skills are "[]consistent with someone who is [not] limited in their social ability to interact with coworkers and supervisors during the course of a normal workday." (T. 37) (internal citations omitted). The takeaway from that sentence is that Michele D. does not have limitations in her ability to interact with coworkers and supervisors. *See* (*id.*). Flatly, the natural reading of ALJ

---

[6] INCONSISTENT, Black's Law Dictionary (12th ed. 2024).

Molleur's second sentence cannot be reconciled with his Paragraph B criteria analysis. *Compare* (*id.*) *with* (T. 24).

The Court cannot glean what the ALJ intended to do as to this social limitation. The Commissioner argues that ALJ Molleur relied on Dr. Deneen's opinion of mild social limitations to reject Dr. Blackwell's findings. (Def. Br. at pgs. 13-14). Not so. ALJ Molleur found *moderate* limitations in Michele D.'s ability to interact with others—not mild—in the Paragraph B analysis. *See* (T. 24). ALJ Molleur also limited Michele D. to unskilled work, which accounts for moderate limitations in interacting with others. *See Wightman v. Comm'r of Soc. Sec.*, 2019 WL 2610712, *2 (W.D.N.Y. 2019) ("moderate limitations in social interaction and other areas of work-related functioning nonetheless permit the performance of unskilled work, such that a limitation to unskilled work is generally sufficient to accommodate those limitations"). All in all, it seems more likely than not that ALJ Molleur did not rely on Dr. Deneen's mild limitations. ALJ Molleur's reliance on moderate limitations makes the rejection of Dr. Blackwell's moderate social limitations all the more confusing. The Court cannot glean what ALJ Molleur intended to find as to Michele D.'s social limitations. And

16

because it cannot do so, the Court finds that ALJ Molleur erred when crafting the RFC.

But that error was harmless. "A limitation to unskilled work can adequately account for a claimant's moderate limitations in interacting with others." *Justine G. v. Comm'r of Soc. Sec.*, No. 21-CV-6701S, 2023 WL 2595011, at *4 (W.D.N.Y. Mar. 22, 2023) (cleaned up) (collecting cases). Here, Dr. Blackwell opined that Michele D. should be limited to "occasional contact with co-workers and the general public." (T. 90). Occasional contact identifies a moderate limitation. *See Reilly v. Colvin*, No. 1:13-cv-00785, 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("[G]enerally a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning."). Seeming to account for moderate limitations in social interactions, ALJ Molleur limited Michele D. to three unskilled jobs. (T. 39). Two of those jobs, Marker and Housekeeping Cleaner, do not require talking. *Dictionary of Occupational Titles*, 323.687-01, 1991 WL 672783 ("Talking: Not Present - Activity or condition does not exist"); *id.*, 209.587-034, 1991 WL 671802 (same). Because those jobs do not require talking, they account for moderate social limitations. *See*

17

*Wightman v. Comm'r of Soc. Sec.*, No. 18-CV-6295L, 2019 WL 2610712, at \*2 (W.D.N.Y. June 26, 2019) (finding the ALJ's decision harmless where "at least three of the four positions identified by the vocational expert" and proffered by the ALJ "require[d] no more than occasional social interaction."); *cf. Joseph T. v. Comm'r of Soc. Sec.*, No. 22-CV-6209, 2024 WL 3228055, at \*4 (W.D.N.Y. June 28, 2024) (affirming the ALJ's decision where doctors opined that the plaintiff had at most moderate limitations and the ALJ limited the plaintiff to unskilled work). It does not matter—as Michele D. argues—that ALJ Molleur did not say the word "public" when performing the supportability and consistency analyses on Dr. Blackwell's opinion. (Pl. Br. at pgs. 10-12). ALJ Molleur accounted for all moderate interactions with the proffered jobs. Put in context, ALJ Molleur's confusing consistency and supportability analyses did not impact Step 5 of the sequential analysis. So, the error is harmless.

18

## VII   CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Michele D.'s motion for judgment on the pleadings (Dkt. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. 11) is **GRANTED**; and it is further

**ORDERED**, that the decision of the Commissioner is **AFFIRMED**, and Michele D.'s Complaint (Dkt. 1) be **DISMISSED IN ITS ENTIRETY.**


Dated: March 16th, 2026

 

Hon. Mitchell J. Katz
U.S. Magistrate Judge

19